IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CHRISTOPHER PAULEY and
KERI PAULEY,

                Plaintiffs,

v.                                          CIVIL ACTION NO. 3:11-0486

METLIFE BANK, N.A.,
a foreign corporation;
METLIFE HOME LOANS,
a foreign division of MetLife Bank, N.A.;
FIRST HORIZON HOME LOANS CORP.,
a foreign corporation; and
LARRY MAY, an individual,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Plaintiffs' Motion to Remand (ECF No. 10); Defendants Metlife Bank, NA, Metlife Home Loans, and First Horizon Home Loans Corp.'s Partial Motion to Dismiss (ECF No. 6); Defendant Larry May's Partial Motion to Dismiss (ECF No. 8); and Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 13). The Court **GRANTS** the motion to remand and **DENIES** the remaining motions as moot.

**I. Factual Background**

Plaintiffs Christopher and Keri Pauley refinanced their home in February of 2009. They allege that the Metlife defendants failed to credit the refinanced loan against their original mortgage. According to the complaint, Plaintiffs communicated this inaccuracy to Defendant Larry May, an employee of the Metlife defendants, who failed or refused to correct the inaccuracy. Due to this alleged failure, Plaintiffs claim that the original mortgage was erroneously reported as overdue and

collection efforts were pursued against them for sums of money that Plaintiffs do not owe. Mr. and Mrs. Pauley brought this civil action in Putnam County Circuit Court alleging violations of the West Virginia Consumer Credit Protection Act along with a number of separate common law claims.

The Defendants' removed this case pursuant to 28 U.S.C. §§ 1332 and 1441. Plaintiffs moved to remand on the ground that this Court lacks subject matter jurisdiction because Defendant May is a citizen of the State of West Virginia. Defendants assert that Defendant May was fraudulently joined and have moved to dismiss Mr. May from this action.

**II. Discussion**

The pending motions present a number of issues regarding Plaintiffs' claims. Because the Court concludes that Defendants have not met the burden of demonstrating fraudulent joinder, it lacks jurisdiction to resolve all but the motion to remand.

Fraudulent joinder is a doctrine which allows a federal court to evaluate the claims against a non-diverse defendant in order to determine whether that defendant was joined only to defeat diversity jurisdiction. *See*, *e.g.*, *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). In order to prove fraudulent joinder, the defendants who have removed the case to federal court must "establish either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Pritt v. Republican National Committee*, 1 F. Supp.2d 590 (S.D.W. Va. 1998)(internal citations omitted).

It is well-settled that "[t]he party alleging fraudulent joinder bears a heavy burden–it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley v. CSX Transportation, Inc.*, 187 F.3d 422, 424 (4th Cir. 1999); *see also*

*Pritt*, 1 F. Supp.2d at 591. The standard for fraudulent joinder "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley*, 187 F.3d at 424. The standard is consistent with the requirement that removal statutes "be strictly construed against removal and all doubts . . . resolved in favor of remand." *Batoff*, 977 F.2d at 851. If Defendants do not allege fraud in Plaintiff's complaint, they bear the burden of establishing that "there is no possibility []he could establish a cause of action against [the party] in a West Virginia court." Pritt, 1 F. Supp.2d at 591.

When determining whether there is a possibility that the plaintiff has a cause of action against the non-diverse defendant, some courts have looked at whether a claim is "wholly insubstantial and frivolous." *See Batoff*, 977 F.2d at 852. In those cases, "[a] claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Id*; *see also Rodriguez v. Sabatino*, 120 F.3d 589 (5th Cir. 1997)(noting that "the question. . . is simply whether the defendant can show that no possibility exists that the plaintiffs have stated a claim against [the non-diverse defendant]").

Because "all legal uncertainties are to be resolved in the plaintiff's favor, . . . a truly 'novel' issue . . . cannot be the basis for finding fraudulent joinder." *Hartley*, 187 F.3d at 425. The likelihood that the plaintiff could ultimately recover against the non-diverse defendant in state court, "however remote," is a sufficient ground for finding that fraudulent joinder does not exist. *See Pritt*, 1 F. Supp.2d at 592. Therefore, "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief can be granted." *Batoff*, 977 F.2d at 852.

The Court should not look any deeper into the merits or specifics of Plaintiff's alleged cause of action. Where a district court "delv[es] too far into the merits in deciding a jurisdictional question," it has erred. *Hartley*, 187 F.3d at 425.

Defendants argue that Plaintiffs have no possibility of proving that Mr. May owed them a duty of care. The Court disagrees. As the West Virginia Supreme Court of Appeals explained in *Glascock v. City Nat'l Bank of West Virginia*, 576 S.E.2d 540, Syl. Pt. 5 (W. Va. 2002) (internal citations omitted):

> An individual who sustains economic loss from an interruption in commerce caused by another's negligence may not recover damages in the absence of physical harm to that individual's person or property, a contractual relationship with the alleged tortfeasor, or some other special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor.

The supreme court of appeals has not set forth a clear rule for determining the existence of a duty arising from a "special relationship" except to clarify that it is a legal question which must be answered by the court and which will differ upon the facts of each relationship. *White v. AAMG Constr. Lending Ctr.*, 700 S.E.2d 791, 799 (W. Va. 2010) (*citing Eastern Steel Constructors, Inc. v. City of Salem*, 549 S.E.2d 266 (W. Va. 2001)).

In *Glascock*, the supreme court of appeals found that a lender making a construction loan who maintains oversight or intervenes in construction creates a special relationship with the borrower that gives rise to a duty to disclose information critical to the construction project. *Id.* at Syl. Pt. 6. Recently, in another case involving a construction loan, the supreme court of appeals did not find a "special relationship" with a lender where the Plaintiff had shown no evidence that the bank independently inspected the home, no evidence that the bank withheld

information from the Plaintiff, and no facts indicating that the Plaintiff was treated differently from other customers.  *White v. AAMG Constr. Lending Ctr.*, 700 S.E.2d 791, 800 (W. Va. 2010).   After surveying the relevant case law, Judge Copenhaver recently found that Mine Safety and Health Administration (MSHA) inspectors could not be held liable to miners under a special relationship theory.  *Bragg v. United States*, 767 F. Supp.2d 617, 628 (S.D.W. Va. 2011).

In addition to claims of mismanagement of their account, Plaintiffs in this case have alleged that Mr. May made materially false statements to third parties regarding their creditworthiness.  *Glascock* and *White* both involved home loans and were resolved at summary judgment.  *Bragg* involved claims against MSHA which were dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  None of the above cases were decided under the highly deferential standard applied to claims of fraudulent joinder.   While the supreme court of appeals has been reluctant to extend a duty based on a "special relationship," this Court cannot conclude that the Plaintiffs do not have a "glimmer of hope" for success.

### III. Conclusion

For the foregoing reasons, the Court finds that Defendants have failed to meet their burden of demonstrating that there is not even the slightest possibility that Plaintiffs' claim against Defendant May could survive under state law.  Therefore, May's citizenship is not disregarded, and complete diversity does not exist.  To be clear, the Court is not resolving whether any duty is in fact owed or, for that matter, whether Defendants can succeed in defeating Plaintiffs' claim under the standard required to analyze a motion to dismiss.  Accordingly, the Court finds Defendants' removal of this action from state court was improper.  Thus, pursuant to 28 U.S.C. § 1447(c), the Court **GRANTS** Plaintiffs' motion and **ORDERS** the case

**REMANDED** to the Circuit Court of Putnam County, West Virginia. In accordance with this ruling, the Court **DENIES as moot** all other pending motions. The Court **DIRECTS** the Clerk to send a copy of this Written Opinion and Order to all counsel of record and any unrepresented parties.

        ENTER:       December 14, 2011

        _____
        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE